IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **NICKELSTON INDUSTRIES, INC.** <br> P.O. Box 133 <br> Lawsonville, NC 27022 <br><br> Plaintiff, <br><br> v. <br><br> **TECHNOPREF INDUSTRIES, INC.** <br> 4725 Eisenhower Avenue <br> Arlington, VA 22304 <br><br> And <br><br> **ATLANTIC SPECIALTY INSURANCE CO.** <br> *Serve on: Registered Agent* <br> Bank of America Center, 16th Floor <br> 1111 East Main Street <br> Richmond, VA 23219 <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. _____ <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff Nickelston Industries, Inc. ("Nickelston"), by and through undersigned counsel, files this Complaint against Defendants Technopref Industries, Inc. ("Technopref") and Atlantic Specialty Insurance Co. ("Atlantic Specialty"). In support of its Complaint, Nickelston avers, upon knowledge as to itself and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. This case involves a claim for outstanding payments on a subcontract between Nickelston and Technopref for work performed on a state highway project in Virginia, and

further damages arising from Technopref's conduct throughout the course of Nickelston's performance.

2. On April 3, 2018, Nickelston and Technopref executed a Guardrails Subcontract (the "Subcontract") related to a state-sponsored bridge rehabilitation project on the Custis Memorial Highway in Arlington, Virginia. This agreement related to a prime contract between Technopref and the Virginia Department of Transportation ("VDOT").

3. The Subcontract provided payment procedures that governed the relationship between Nickelston, Technopref, and VDOT. The prime contract required Technopref to submit monthly applications for progress payments to VDOT. Under the Subcontract, Nickelston was obliged to submit any applications for payment no later than ten days in advance of this deadline. In return, Technopref was obliged to remunerate Nickelston within ten days of receipt of payment from VDOT.

4. Under its contract with VDOT, Technopref was required to obtain a payment bond in the full amount of the Subcontract Price. Consistent with these terms, Technopref purchased a bond from Atlantic Specialty. Nickelston is the obligee of this bond and the lawful recipient of the bond's funds in the event of Technopref's nonpayment.

5. Nickelston dutifully fulfilled all of its obligations under the Subcontract, and submitted its applications for payment in compliance with the Subcontract's terms. Despite Nickelston's performance, Technopref has wrongfully withheld $284,015.77 from Nickelston in direct violation of the Subcontract.

6. Additionally, Technopref has caused $438,000.00 in damages by retaining possession of two of Nickelston's Temporary Impact Attenuators, and a further $27,200.00 in

damages throughout the course of Nickelston's performance by inducing Nickelston to expend additional fuel, time, and manpower on unnecessary trips to and from the work site.

7. Nickelston has attempted in good faith to resolve this dispute on several occasions. Both parties appeared before VDOT on Monday, October 21, 2019 to determine Technopref's outstanding payment obligations and any claimed right of offset due to project delays. Following this meeting, VDOT concluded that any delays in the project are attributable to Technopref, and that Technopref should release all funds owed to Nickelston. Consistent with this opinion, Nickelston has submitted three invoices to Technopref, and filed a demand letter seeking the release of all payments owed under the Subcontract.

8. Technopref has not responded to Nickelston's invoices or demand letter, and has not released any of the funds owed.

## PARTIES

9. Plaintiff Nickelston Industries, Inc. is a North Carolina corporation with its principal place of business in Lawsonville, North Carolina. Nickelston is in the business of highway fence and guardrail construction for the commercial, industrial, and private sectors. Nickelston routinely performs work to this effect under government contracts in Virginia and the Carolinas.

10. Defendant Technopref Industries, Inc. is a Virginia corporation based in Arlington, Virginia. VDOT hired Technopref as a prime contractor to rehabilitate a bridge on the Custis Memorial Highway in Arlington. As part of this project, Technopref retained Nickelston as a subcontractor to install guardrails, steel median barriers, and other support structures at the project site.

11. Defendant Atlantic Specialty Insurance Company is a corporation duly organized and existing under the laws of the State of New York, which maintains its principal place of business in the State of Minnesota. Atlantic Specialty is duly authorized to engage in the surety business in the Commonwealth of Virginia. Atlantic Specialty is the obligor on a payment bond purchased by Technopref under the terms of the Subcontract.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity of citizenship between Nickelston, Technopref, and Atlantic Specialty, and the amount in controversy exceeds $75,000.

13. There is complete diversity of citizenship between the parties because Nickelston is a North Carolina corporation with its principal place of business in Lawsonville, North Carolina, while Technopref is a Virginia corporation with its principal place of business in Arlington, Virginia, and Atlantic Specialty is a New York corporation with its principal place of business in Minnesota.

14. Exercise of personal jurisdiction over Technopref is proper, pursuant to Va. Code § 8.01-328.1, because this action arises from the transaction of business in the Commonwealth of Virginia under a contract to supply services in the Commonwealth.

15. Specifically, this dispute arises from a Guardrails Subcontract between Nickelston and Technopref to complete a construction project in Arlington, and Atlantic Specialty's obligations under a payment bond obtained in accordance with that Subcontract.

16. Venue is proper in this judicial district and division pursuant to 28 U.S.C. §§ 1391(b)(2) – (b)(3), because a substantial part of the events or omissions giving rise to the claim

occurred in this district, and the property subject to Nickelston's conversion claim is situated in this district.

## FACTS

### I. The Guardrails Subcontract

17. On February 15, 2018, Technopref entered into a contract (the "Prime Contract") with the Virginia Department of Transportation to rehabilitate a bridge over Ramps B and F on the Custis Memorial Highway in Arlington, Virginia. Among other work items, Technopref was responsible for replacing various support structures, repairing deteriorated roadway, piers, and abutments, and providing additional protective materials.

18. On April 3, 2018, Technopref and Nickelston executed a Guardrails Subcontract.

19. As subcontractor, Nickelston was accountable for a set of work items listed in the Subcontract. These responsibilities included constructing new guardrails, removing and repairing existing guardrails, and installing support structures such as breakaway cables, nose barriers, and impact attenuators. Nickelston would provide all labor, materials, equipment, services, and supervision necessary to complete the project.

20. Each party was responsible for meeting certain timing and schedule requirements. Technopref was required to notify Nickelston at least seven working days before commencing each new stage of work under the Prime Contract. In return, Nickelston was required to supply sufficient manpower, equipment, and materials to avoid delays, and to make modifications in the performance of its obligations in order to comply with the project schedule.

21. Under the terms of the Prime Contract, Technopref was required to furnish a payment bond from a duly licensed surety company as security for the faithful performance and payment of their obligations.

22. On January 22, 2018, Technopref obtained a bond from Atlantic Specialty in the amount of $3,907,301.10. As Technopref's subcontractor, Nickelston is the obligee of this bond, and is entitled to compensation from Atlantic Specialty in the event of nonpayment or nonperformance by Technopref.

## II. Subcontract Payment Procedures, Calculations, and Obligations

23. Under the Prime Contract, Technopref was directed to submit monthly requests for progress payments to the Virginia Department of Transportation.

24. Ten days before the deadline for each submission, Nickelston was required under the Subcontract to provide Technopref with a draft application summarizing all of the work it had completed under the Subcontract as of that date. Nickelston's compensation would be determined by calculating a Subcontract Price equal to the aggregate cost of this work, minus amounts previously paid.

25. The Subcontract Price included the following components:

  a. Cash allowances accounting for materials and equipment delivered to the site, on-site unloading and handling, labor, installation, overhead, profit, and other mobilization expenses.

  b. The aggregate cost of every unit item delivered to the work site, as estimated by a table included in the Subcontract.

26. Additionally, the Subcontract directed Technopref to remunerate Nickelston for any increase to the Subcontract Price incurred as a result of changes to the Subcontract's work requirements.

27. On consent of both parties, increases in the Subcontract Price could be provided as a mutually agreeable lump sum, or under unit prices consistent with the work items set forth in

the Subcontract. If the parties could not come to terms, the amount of increased compensation would be calculated based on Nickelston's labor, any sub-subcontracting expenses, materials and equipment, and reasonable overhead and profit.

28. Nickelston was obligated to provide documentation supporting each application for payment. This included lien wavers, documents warranting that all materials and equipment delivered to the site during the payment period were free of liens and obligations, and evidence that all materials and equipment were properly insured.

29. Additionally, each request was to be accompanied by an affidavit describing any arrangements Nickelston had entered with any sub-subcontractors, suppliers, and vendors, and assuring that these parties had been properly reimbursed for their services.

30. If Technopref wished to make any corrections to Nickelston's submissions, it was responsible for returning these applications to Nickelston within five days of receipt.

31. Technopref was required to reimburse Nickelston for all amounts due within ten days of its receipt of payment from VDOT under the Prime Contract. Technopref was authorized to withhold compensation from Nickelston only if:

    a. The work performed was defective or had been damaged by Nickelston

    b. The Subcontract Price had been reduced by changes ordered by VDOT.

    c. Technopref had been required to correct or complete Nickelston's work.

    d. Claims or liens had been filed against Technopref, or against any bond in connection with Nickelston's performance under the Subcontract.

    e. VDOT had executed an offset against Technopref that was attributable to Nickelston's activities or performance.

    f. Nickelston had defaulted under the terms of the Subcontract.

32. Upon the fulfillment of its obligations and the conclusion of the project, Nickelston was required to submit an application for Final Payment on all remaining items. Consistent with the above requirements, this application was to include a lien waiver, and a sworn statement describing any and all sub-subcontractors, suppliers, and vendors, their contract amounts, and the amounts paid to each of these parties.

33. Technopref was responsible for issuing Nickelston's Final Payment no later than ninety days following the completion of all subcontract work, or ten days after Technopref's receipt of final payment from VDOT.

IV.   **Technopref's Failure to Compensate Nickelston**

34. Nickelston promptly began its performance on April 11, 2018.

35. Nickelston fulfilled all of its obligations under the Subcontract.

36. Nickelston has made good faith efforts to collect the final payments owed under the Subcontract. Despite these efforts, Technopref has refused to remunerate Nickelston.

37. On August 27, 2019, Nickelston submitted two invoices for an outstanding total of $111,995.63 in funds owed under the Subcontract. These invoices included $22,031.25 for subcontract work completed during June 2019 (Invoice #7116), and $89,964.38 for unit item costs incurred during July 2019 (Invoice #7117). Each invoice was accompanied by documents verifying the amount and cost of each item provided by Nickelston during the corresponding work period, consistent with the terms of the Subcontract.

38. Sometime thereafter, VDOT expressed dissatisfaction with the quality of the work that had been performed on the Custis Memorial Highway project, and filed a claim for liquidated damages against Technopref.

39. Technopref attributed fault for delays and deficiencies in the project to Nickelston and its other subcontractors.

40. On Monday, October 22, 2019, individuals representing both parties met before a neutral arbiter from VDOT's Office of Civil Rights at 2121 Eisenhower Avenue Suite 301, Alexandria VA 22314. The purpose of this meeting was to resolve any claimed offset due to project delays, and address the issue of outstanding payments due to Technopref's subcontractors. Technopref provided VDOT with a Revised Schedule Impact Analysis in support of its claim.

41. On October 28, 2019, VDOT rejected Technopref's Revised Schedule Impact Analysis, and concluded that any delays in the project were attributable solely to Technopref, rather than Nickelston.

42. Based on this finding, on November 14, 2019, VDOT's Office of Civil Rights sent a letter to Louis Charette, Vice President of Technopref, discussing VDOT's findings and declaring that Technopref should release all funds owed to Nickelston.

43. Despite these invoices, letters, declarations, and findings, Technopref has not released any of the funds owed under the Subcontract.

44. To date, Technopref has wrongfully withheld amounts owed from Nickelston in direct violation of the Subcontract, and in contravention of the determinations of VDOT's Office of Civil Rights.

**IV.     Technopref's Use of Two Temporary Impact Attenuators**

45. Independent of Technopref's violation of the Guardrails Subcontract, Technopref has continued to use and refused to return two of Nickelston's Temporary Impact Attenuators through the present date.

46. Impact attenuators are traffic control devices that reduce the damage caused by a vehicle collision by using systems and materials ranging from sand to hydraulics to diffuse the kinetic energy of the impact and redirect the colliding vehicle.

47. Permanent impact attenuators are frequently installed on highway medians and near vulnerable fixed structures such as overpass supports. Temporary impact attenuators are vehicle-mounted or standalone devices that are regularly deployed to protect work vehicles at construction sites in high-speed areas.

48. Nickelston deployed two Temporary Impact Attenuators to protect the workers, equipment, and structures at the construction site on the Custis Memorial Highway.

49. Technopref has continued to use and/or possess the Temporary Impact Attenuators from Nickelston.

50. On December 9, 2019, Nickelston submitted an invoice (No. 7384) for an outstanding total of $89,968.75 in funds owed under the Subcontract. These damages included expenses relating to Technopref's continued use of the impact attenuators.

51. Since these above invoices were sent, Nickelston has incurred additional damages relating to Technopref's continued use of Nickelston's Temporary Impact Attenuators. These damages are currently valued at at least $438,000.

**V.    Damages Caused by Technopref's Conduct During the Subcontract Period**

52. Additionally, Technopref has caused damages to Nickelston throughout the course of performance of the Subcontract by repeatedly causing Nickelston to make unnecessary trips to the work site. These trips have resulted in lost profits, wasted time, expended fuel, and costly mobilization efforts.

53. On October 22, 2018, Technopref informed Nickelston that the worksite was prepared for subcontracting work to be completed. Based on this information, Nickelston mobilized its laborers and equipment, and travelled six hours to the contract site.

54. Upon arrival, Nickelston was informed that it could not begin the scheduled work due to piles of concrete littered about the work site. Technopref refused to remedy the problem.

55. The resulting delays required Nickelston's personnel to remain on the work site for four hours longer than anticipated. As Nickelston's overhead is $1,000.00 per hour, Technopref owes Nickelston $4,000.00 for this incident.

56. On February 5, 2019, Technopref cancelled a scheduled lane closure, forcing Nickelston's employees to remain on site for an extra two days.

57. This delay caused Nickelston an additional $7,600.00 in damages, including $1,600.00 in meals and hotel costs, and $6,000.00 in lost profits incurred when Nickelston could not complete other scheduled work assignments.

58. On June 3, 2019, Technopref contacted Nickelston with VDOT's final work items necessary for the completion of the project. Technopref indicated that any delay could lead to liquidated damages, which would be deducted from Nickelston's Subcontract Price. Nickelston traveled to the worksite to complete this assignment on June 17, 2020.

59. Upon arrival, Technopref claimed that it was not prepared for work to commence, and directed Nickelston to leave the site and return two days later. The lost profits, wasted time, spent fuel, and extra mobilization required by this excursion caused Nickelston an additional $15,600.00 in damages.

60. The total cost of these incidents amounts to an additional $27,200.00 in damages.

## COUNT I
### (Breach of Contract against Defendant Technopref)

61. Nickelston adopts and incorporates each of its preceding allegations above, as if fully set forth herein.

62. The Guardrails Subcontract is a legally enforceable contract between Nickelston and Technopref, formed and governed under the laws of Virginia.

63. Pursuant to the Guardrails Subcontract, Technopref had a legally enforceable duty to remunerate Nickelston for the full amount of the Subcontract Price no more than ninety days following the completion of the work specified in the Subcontract.

64. Technopref has received three invoices from Nickelston for services rendered pursuant to the Subcontract that it has refused to pay in a timely fashion:  (a) Invoice 7116 (for $20,531.25); (b) Invoice 7117 (for $89,964.38); and (c) Invoice 7384 (for $89,968.75).

65. In addition, Technopref has continued to use Nickelston's Temporary Impact Attenuators following the conclusion of the project.  The rate for use of this equipment under the Guardrails Subcontract is $1,000 per unit per day.  Technopref has used the attenuators for over 219 days since the last invoice, so now owes Nickelston an additional $438,000.00 in connection with the use of this equipment pursuant to the terms of the Guardrails Subcontract. Technopref has refused to make payment for these items.

66. Finally, Technopref owes Nickelston for services relating to the Subcontract relating to three requested service dates by Nickelston: (1) October 22, 2018 ($4,000); (2) February 5, 2019 ($7,600); and (3) June 17, 2019 ($15,600).

67. Interest is owed on the above amounts and continues to accrue.

68. Technopref's continued failure to compensate Nickelston is a violation of the plain terms of the Subcontract.

69. As Technopref has withheld $691,810.41 in funds owed to Nickelston under the Subcontract, and this breach has caused damages to Nickelston commensurate with the amount owed.

70. Accordingly, Nickelston is entitled to a judgment of $691,810.41 against Technopref as compensation for the damages caused by Technopref's continuing breach of the Guardrails Subcontract.

WHEREFORE, Plaintiff Nickelston Industries, Inc. requests that judgment be entered against Defendant Technopref Industries, Inc. in an amount to be calculated by the Court, including the principal sum owed, applicable interest, late charges, costs and expenses in connection with this action, including reasonable attorneys' fees, and that the Court grant such other and further relief as it deems to be just and proper.

## COUNT II
**(Performance Bond Claim against Defendant Atlantic Specialty )**

71. Nickelston adopts and incorporates each of its preceding allegations above, as if fully set forth herein.

72. As required by the terms of the Guardrails Subcontract, Technopref obtained a payment bond from Atlantic Specialty.

73. Nickelston is an obligee of this bond, and is entitled to payment from Atlantic Specialty in the event of nonpayment by Technopref.

74.     As Technopref has withheld $691,810.41 from Nickelston under the Subcontract, Nickelston is entitled to a judgment of $691,810.41 against Atlantic Specialty under the terms of the payment bond.

WHEREFORE, Plaintiff Nickelston Industries, Inc. requests that judgment be entered against Defendant Atlantic Specialty Insurance Company, in an amount to be calculated by the Court, including the principal sum owed, applicable interest, late charges, costs and expenses in connection with this action, including reasonable attorneys' fees, and that the Court grant such other and further relief as it deems to be just and proper.

Respectfully Submitted,

Dated:  July 15, 2020                                   By: _____/s/ James Bragdon_____

James D. Bragdon
218 North Charles Street, Suite 400
Baltimore, MD 21201
Phone: 410-951-1416
Facsimile: 410-468-2786
*Attorneys for Plaintiff*

#708313
014125-0001